**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and CHARLES A. WHOBREY, as Trustee | ) | |
| Plaintiffs, | ) | Case No. 18-cv-7226 |
| v. | ) | Hon. Jorge L. Alonso |
| AUDREY FRIEDLANDER RODRIGUEZ, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After a plan participant died, plaintiffs mistakenly continued to pay his pension for roughly seven months. Plaintiffs, seeking return of the overpayments, filed suit against the participant's widow and moved for summary judgment.

## I. BACKGROUND

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). When one party supports a fact with admissible evidence and the other party fails to controvert the fact with admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider

any facts that parties fail to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed. In reviewing a party's statement of facts, the Court considers any objections opposing parties make to the admissibility of evidence; but, where a party fails to make an objection, the objection is deemed waived for purposes of the motion for summary judgment.

In this case, defendant has not responded to plaintiffs' motion for summary judgment. Defendant did not respond to plaintiffs' statement of facts, so the Court has deemed undisputed every fact in plaintiffs' statement of facts that was supported by admissible evidence. Defendant, by failing to respond, has waived any objections to the admissibility of plaintiffs' evidence. Defendant also failed to respond to defendants' legal arguments, thereby waiving any legal arguments she might have had. *See Burton v. Board of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("[I]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If the [nonmoving party] does not do so, and loses the motion, it cannot raise such reasons on appeal.") (citations omitted). Still, a motion for summary judgment is not a default motion, and plaintiffs bear the burden of establishing that they are entitled to judgment as a matter of law.

The following facts are undisputed.

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States" or the "Fund") is an ERISA pension fund administered by a Board of Trustees, including plaintiff Charles Whobrey (the "Trustee"). The Trustees have established a multi-employer pension plan (the "Plan"), funded by contributions from participating employers, whose employees are members of the International Brotherhood of Teamsters.

The Plan provides, among other things:

> RECOVERY OF OVERPAYMENTS
>
> * * *
>
> (b) Whenever the Pension Fund has made benefit payments exceeding the amount determined by the provisions of its Pension Plan, due to a mistake, the Board of Trustees shall have the right to recover the excess payment.

Plan Article VII, Section 7.05.

Defendant Audrey Friedlander Rodriguez ("Audrey") is the widow of Edward Rodriguez ("Edward"), a plan participant who retired in 2009. Edward and Audrey married in 2014, and, because the marriage occurred after Edward's retirement, were not eligible to elect surviving-spouse benefits under the Plan. The Plan told Edward and Audrey as much in July 2014, after the Plan received a letter from an attorney inquiring about Edward and Audrey's eligibility for surviving-spouse benefits.

Thus, Edward's eligibility for monthly pension benefits under the Plan ceased upon his death on May 17, 2016. Prior to Edward's death, the Plan had deposited Edward's monthly pension benefit of $1,838.07 directly into Edward's account (the "Account") at JP Morgan Chase Bank, N.A. Before Edward's death, Audrey was a joint account holder of the Account. After Edward's death, Audrey became an owner of the Account. (It is unclear whether she became the only owner after Edward's death.) The Fund did not receive notice of Edward's death until January 20, 2017, by which time it had directly deposited an extra $14,704.56 (to which Edward was not entitled under the terms of the Plan) into the Account.

The Fund, on January 23, 2017, initiated reclaim transactions. Those attempts were rejected, because the Account was frozen. (Plaintiffs do not say why or for how long the Account was frozen.) The Fund demanded that Audrey repay the benefits, but she declined.

Plaintiffs, naturally, want the money back. They filed a five-count complaint, asserting four counts under the Employee Retirement Income Security Act ("ERISA") and one count for fraud. Defendant denied the allegations in plaintiffs' complaint and participated in discovery. Plaintiffs now move for summary judgment.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party in this case, though, is the defendant, who bears no burden as to plaintiffs' claims. Rather:

> Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of finding in favor of the non-movant on the claim. If the movant has failed to make this initial showing, the court is obligated to deny the motion.

*Hotel 71 Mezz Lender LLC v. The National Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted).

## III. DISCUSSION

### A. Plaintiffs' ERISA claims

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), grants a private right of action to plan fiduciaries to obtain equitable relief to enforce the terms of the plan. Specifically, that section provides:

> A civil action may be brought—
>
> * * *
>
> (3) by a . . . fiduciary . . . (B) to obtain other appropriate *equitable* relief . . . (ii) to enforce . . . the terms of the plan[.]

29 U.S.C. § 1132(a)(3) (emphasis added). In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002), the Supreme Court reiterated that "equitable relief" in § 502(a)(3) means relief that was typically available in equity; it does not include legal remedies. Thus, a money judgment against personal assets is not available under ERISA § 502(a)(3). *Great-West*, 534 U.S. at 221 ("Because petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3) does not authorize this action."). In *Great-West*, the Supreme Court explained that the requested relief was not equitable merely because the plaintiff described that relief as "restitution." The Supreme Court explained:

> [F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff the particular funds or property in the defendant's possession. . . . The basis for petitioner's claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

*Great-West*, 534 U.S. at 214.

In Count III, plaintiffs assert that they have an equitable lien on the overpayments deposited into the Account. (Complt. pp. 7-8). Plaintiffs have put forth evidence that the Plan gives the Fund the right to recover excess payments that were paid due to mistake. (Plan Article VII, Section 7.05). Plaintiffs, however, put forth no evidence that the $14,704.56 that the Fund deposited in the Account is still there. Even if plaintiffs are correct that they had an equitable lien on each mistaken deposit of $1,838.07 (for a total of $14,704.56) as of the moment each mistaken deposit was made, dissipation of those funds would eliminate both the lien and the Fund's ability to enforce it via ERISA § 502(a)(3). *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 577 U.S. 136 (2016). In *Montanile*, the Supreme Court explained:

> Our prior cases do not address whether a plan is still seeking an equitable remedy when the defendant, who once possessed the settlement fund, has dissipated it all, and the plan then seeks to recover out of the defendant's general assets.
>
> To resolve this issue, we turn to standard equity treatises . . . [which] make clear that a plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car). A defendant's expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien. The plaintiff then may have a personal claim against the defendant's general assets—but recovering out of those assets is a *legal* remedy, not an equitable one.
>
> Equitable remedies 'are, as a general rule, directed against some specific thing: they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of defendant's assets.' . . .
>
> If, instead of preserving the specific fund subject to the lien, the defendant dissipated the entire fund on nontraceable items, that complete dissipation eliminated the lien. Even though defendant's conduct was wrongful, the plaintiff could not attach the defendant's general assets instead. . . .
>
> In sum, at equity, a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all. The plaintiff could not attach the defendant's general assets instead because those assets were not part of the specific thing to

> which the lien attached. This rule applied to equitable liens by agreement as well as other types of equitable liens.

*Montanile*, 577 U.S. at 658-59 (citations omitted).

Here, because plaintiffs have not put forth evidence that defendant did not dissipate the overpayment, plaintiffs are not entitled to judgment as a matter of law on Count III, as it is alleged in the complaint. In the motion for summary judgment, however, plaintiffs argue that the relief they seek is surcharge, which they argue is equitable relief. The Court agrees that the remedy of surcharge is an equitable remedy. *See Divane v. Northwestern Univ*., Case No. 16 C 8157, 2018 WL 1942649 at *2 (N.D. Ill. April 25, 2018), *aff'd* 953 F.3d 980 (2020). The remedy is not appropriate here, though, because a surcharge is a remedy for the beneficiary from the trustee, *not* a remedy for the trustee from a third party. *See Restatement (Third) of Trusts* § 95, comment b (2012) ("If a breach of trust causes a loss, including any failure to realize income, capital gain or appreciation that would have resulted from proper administration, the *beneficiaries* are *entitled to restitution and may have the trustee surcharged* for the amount necessary to compensate fully for the consequences of the breach.") (emphasis added). Plaintiffs are not entitled to summary judgment on their claim under ERISA § 502(a)(3).

Beyond seeking relief under ERISA § 502(a)(3), plaintiffs seek summary judgment on Count IV, in which plaintiffs assert a claim for "unjust enrichment under the federal common law of ERISA." (Complt. pp. 8-9). Plaintiffs want the Court to recognize their claim for unjust enrichment under the common law of ERISA, and plaintiffs seek, as a remedy, "restitution" of the $14,704.56. The motion is denied, because plaintiffs have not shown they are entitled to judgment as a matter of law on such a claim.

The cases plaintiffs cite do not support the existence of such a claim, and this Court is not at liberty to write one in to ERISA. First, in *Provident Life & Accident Ins. Co. v. Cohen,* which

plaintiffs cite, the Fourth Circuit affirmed *dismissal* of an unjust enrichment claim under ERISA. *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413 (4th Cir. 2005). Far from endorsing an unjust enrichment claim under the common law of ERISA, the Fourth Circuit said its prior decision, *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990), which had recognized such a claim *before Great-West* and its progeny, was in "serious doubt." *Cohen*, 423 F.3d at 423. The Fourth Circuit added that it was "particularly inappropriate to afford Provident a federal common law remedy where Congress purposefully chose to exclude such a remedy under the governing statute." *Cohen*, 423 F.3d at 424. Just so here.

Plaintiffs also cite *Harris Trust and Sav. Bank v. Provident Life and Acc. Ins. Co.*, 57 F.3d 608 (7th Cir. 1995), but the Seventh Circuit did not adopt an unjust-enrichment claim under the common law of ERISA in that case, either. There, the Seventh Circuit declined to decide whether such a claim was appropriate. *Harris Trust*, 57 F.3d at 615. Granted, it affirmed a money judgment as "restitution" for the overpayment of benefits; but that relief cannot survive *Great-West* or *Montanile*.

In ERISA, which is a "comprehensive and reticulated statute" that was passed after "a decade of congressional study," *Great-West*, 534 U.S. at 209 (citations omitted), Congress explicitly limited fiduciaries to "equitable" remedies in enforcing terms of a plan. 29 U.S.C. § 1132(a)(3). That is "strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 254 (1993) (citations omitted). Plaintiffs argue that allowing an unjust enrichment claim "would perpetuate an important statutory policy—namely protecting the financial integrity of pension plans[.]" (Plfs. Brief at 9/Docket 49 at 9). The purpose of a statute, though, does not allow a court to change the words in a statute. In *Montanile*, the Supreme Court explained:

> Finally, the Board argues that ERISA's objectives—of enforcing plan documents according to their terms and of protecting plan assets—would be best served by allowing plans to enforce equitable liens against a participant's general assets. . . . We have rejected these arguments before, and do so again. '[V]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration.' Had Congress sought to prioritize the Board's policy arguments, it could have drafted § 502(a)(3) to mirror ERISA provisions governing civil actions. . . .

*Montanile*, 577 U.S. at 149-50 (citations omitted); *see also Central States, Southeast and Southwest Areas Health and Welfare Fund v. American Int'l Group, Inc.*, 840 F.3d 448, 454 (7th Cir. 2016). The Court will not write into ERISA a claim that has not been endorsed by the Seventh Circuit Court of Appeals or the Supreme Court.

Plaintiffs also seek summary judgment as to Count I, in which plaintiffs allege that Audrey is a fiduciary under ERISA by virtue of her "possession of assets, which in equity and good conscience are property of the plan." (Compl. ¶ 27). Plaintiffs seek to hold her liable for breach of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

ERISA states that a "person is a fiduciary with respect to the plan to the extent (i) he . . . exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A). Plaintiffs' theory is that once the Fund mistakenly deposited money into the Account, defendant exercised control over the disposition of those assets. The Court is not convinced plaintiffs are entitled to judgment as a matter of law on this claim.

First, the Supreme Court has said that ERISA "fiduciary duties draw much of their content from the common law of trusts," such that "the law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties." *Varity Corp. v. Howe*, 516 U.S. 489, 496-97 (1996). A basic principle of trust law is that a person "who has not accepted the office cannot be compelled to act as trustee." *Restatement (Third) of Trusts* § 35, comment a (2012). It would be strange, then, for plaintiffs to be able to

make a third party an ERISA fiduciary, with all its attendant duties and liabilities, merely by mistakenly depositing money into an account of which the third party is an owner. *But see International Painters and Allied Trades Industry Pension Fund v. Aragones*, 643 F. Supp.2d 1329, 1337 (M.D. Fla. 2008) (granting default judgment against defendant who, while not having agreed to be a fiduciary, had agreed to receive only 60 payments before collecting 130 payments, such that "[i]dentifying Defendant as a fiduciary" was "more than a 'theoretical contrivance.'").

Second, plaintiffs' theory assumes the money, once deposited into the Account, remains plan assets. Plaintiffs have not shown that assumption is correct as a matter of law. *Cf. Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) (once assets were "transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans."); *People ex rel. Russell v. Farmers' State & Sav. Bank of Grant Park*, 338 Ill. 134, 137 (Ill. 1930) ("As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes of the creditor of the bank.").

Finally, even if the Court assumes, without deciding, that the deposits remained plan assets, plaintiffs have not put forth facts establishing as a matter of law that defendant exercised control over the management or disposition of those assets. Plaintiffs have put forth no evidence as to what happened to those funds after plaintiffs deposited them into the Account. Plaintiffs have put forth evidence that defendant was "an" owner of the account, but they do not say whether defendant was the only owner. Furthermore, plaintiffs have also put forth evidence that the Account was frozen as of January 23, 2017; but, by whom and for how long the Account was frozen, the plaintiffs do not say. A reasonable inference of a frozen account is that defendant did not have control over it.

For these reasons, plaintiffs have not shown that they are entitled to judgment as a matter of law on any ERISA claim, and the motion for summary judgment as to the ERISA claims is denied.

**B. Plaintiffs' fraud claim**

Finally, in Count V, plaintiffs allege defendant committed fraud in that she fraudulently concealed the fact that Edward died on May 17, 2016. (Complt. at pp. 9-11). Plaintiffs seek a money judgment against Audrey.

Although ERISA preempts state-law claims relating to ERISA plans, it does not preempt fraud claims. *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 781 (7th Cir. 2002) ("[W]e hold that a plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law."). To prevail on a claim for fraudulent concealment, plaintiffs must prove: "(1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury." *Biondi*, 303 F.3d at 777 (citing *Schrager v. North Community Bank,* 328 Ill.App.3d 696, 262 Ill.Dec. 916, 767 N.E.2d 376, 384 (2002)).

Plaintiffs put forth undisputed evidence that they learned of Edward's death on January 20, 2017. They do not, however, say how they learned of Edward's death. The Plan has put forth no evidence that Audrey intended to induce the false belief that Edward remained living.

Nor has the Plan put forth any evidence that it could not have discovered the truth through reasonable inquiry or that it was prevented from making a reasonable inquiry. Accordingly, plaintiffs have not shown that they are entitled to judgment as a matter of law on Count V. Their motion for summary judgment is denied as to Count V.

**CONCLUSION**

For all of these reasons, the Court denies plaintiffs' motion [48] for summary judgment. This case is set for status hearing on February 18, 2021 at 9:30 a.m.

**SO ORDERED.** **ENTERED: January 14, 2021**

**HON. JORGE ALONSO**
**United States District Judge**